GEORGE W. PHIPPS, Appellant, *vs.* WILLIAM K. McFARLANE, Respondent.

The Plaintiff agreed verbally to furnish material for, and prepare, and fit the same for putting up at the steam mill of P. B. & Co., at Minneapolis, four houses known as the "Fitzgerald patent portable houses," of certain specified dimensions, at a specified time and for a specified price. *Held*—that this contract was not for the sale of material *in solido*, but that it blends together the price of the thing sold, and compensation for work, labor, skill and material, so that they cannot be discriminated, and is therefore not within the statute of frauds, and is void.

This was an appeal from an order of the District Court of Hennepin County, granting a new trial. The action was

founded upon a contract set out in the opinion of the Court—and the issues joined were referred by consent to a referee, who reported in favor of the Plaintiff.   The Defendant moved for a new trial, which was granted by the Court below, (C. E. Flandrau, Judge.)

The following are the points and authorities relied upon by the Counsel for Appellant :

The Court below erred in granting a new trial in this action because—

*First.*—The contract declared on and proved is not a contract for the sale of goods amounting to over fifty dollars in value, and therefore within the statute of frauds and void, as assumed by the Court below—but is in fact a contract for work and labor, and therefore without the statute and valid.   21 *Pick.* 205; 20 *Conn.* 38; 1 *Met.* 283; 19 *Maine* 137; 8 *Cow.* 215. 5 *Sand. N. Y.* 1 ; 18 *Johns.* 58 ; 10 *Barb.* 406 ; 4 *Selden*, 182 ; 19 *Barb.* 455 ; 2 *Parsons on Cont.* 334, *note f.*

The true rule by which to determine whether the contract is one of sale within the meaning of the statute, or for work and labor, &c., is thus stated by Parsons upon a full review of the whole law and decisions upon the subject : "A contract for an article not now the seller's or not existing, and which must therefore be bought or manufactured before it can be delivered will also be within the statute, if it may be procured by the seller by purchase from any one, or manufactured by himself at his choice, the bargain being in substance as well as form, only, that the seller shall on a certain day deliver certain articles to the buyer for a certain price.   But if the contract states or implies that the thing is to be made by the seller, and also blends together the price of the thing and compensation for work, labor, skill and material, so that they cannot be discriminated, it is not a contract of purchase and sale, but a contract of hiring and service, or a bargain by which one party undertakes to labor in a certain way for the other party who is thereupon to pay him certain compensation, and this contract is therefore not within the statute of frauds." 2 *Pars. on Cont.* 334.

In *Hight vs. Ripley*, 19 *Maine*, Defendant agreed to furnish Plaintiff as soon as practicable 1,000 or 1,200 pounds of maleable hoe shanks agreeable to patterns left with him. The Court held this to be a contract for the manufacture of the articles referred to, and so not within the statute—and Shepley, Justice, says "a contract for the manufacture of an article differs from a contract of sale in this : the person ordering the article to be made is under no obligation to receive as good or even a better one of the like kind purchased from another, and not made for him. It is the peculiar skill and labor of the other party combined with the materials for which he contracted and to which he is entitled."

In the case at bar the Plaintiff agreed to furnish materials for four houses of a particular kind and size, and to *prepare and fit* such materials for putting up at Pomeroy, Baker & Co.'s mill, in Minneapolis, as soon *thereafter* as Plaintiff could get said materials prepared and fitted, and Defendant agrees if the Plaintiff could furnish said materials and *prepare and fit* the same at said mill as soon thereafter as the same could be done, to pay the Plaintiff for each of said houses *so* prepared and fitted for putting up, $200 as soon as the same should be furnished, prepared and fitted, &c, *by* Plaintiff.

The requirements of this contract would not have been satisfied by the Plaintiff's purchasing materials already in existence, prepared and fitted, and delivering them to Defendant. Defendant had the right of insisting upon the materials being prepared and fitted by Plaintiff, or under his direction, for it was only for houses or materials *so* prepared and fitted that he agreed to pay. Neither the term sale nor purchase is used in the agreement, and no language was used indicating such as the intention of the parties.

The only ground upon which the Court below granted a new trial was that the contract was void by the statute of frauds.

Hence it is unnecessary to examine the other points made below. Provided, however, the Court should look through the whole case, the following points are submitted in support of the decision of the referee.

1. The complaint is fully sufficient, both as to the allegations of the agreement and of the performance. As to performance the general allegation is sufficient under our statute, and in this case the allegations of tender and performance, *none of which are denied*, are as full as the nature of this case requires.

2. No evidence of tender was necessary, the same not being denied, yet it is full.

The only point in issue by the pleadings is as to the time of performance of the contract, and upon this the finding of the referee, there being conflicting evidence, is final and conclusive.

As to the other material facts stated in the complaint, although they were not put in issue by the pleadings, yet sufficient evidence was introduced to warrant the finding of the referee, provided they had been properly controverted by the answer, and his finding of facts from such evidence is final and not the subject of review.

[The Respondent's points and authorities are not on file.]

CORNELL & VANDERBURGH, Counsel for Appellant.

HENRY HILL, Counsel for Respondent.

*By the Court*—ATWATER, J. The only question properly presented in this case for the consideration of the Court is, whether the contract set forth in the complaint is within the statute of frauds and void. The rule seems to be well established by which it is determined whether a particular contract comes within the provisions of the statute of frauds—the principal difficulty that exists on the subject, being the application of the rule to the various shades of contracts upon which the adjudication of Courts is required. Parsons in his work on contracts, (2d *vol.*, *p.* 334,) states the principle thus: "A contract for an article not now the seller's, or not existing, and which must therefore be bought or manufactured before it can be delivered, will also be within the statute, if it may

be procured by the seller by purchase from any one, or manufactured by himself at his choice, the bargain being in substance as well as form, only that the seller shall, on a certain day, deliver certain articles to the buyer for a certain price.   But if the contract states or implies that the thing is to be made by the seller, and also blends together the price of the thing and compensation for work, labor, skill and material, so that they cannot be discriminated, it is not a contract of purchase and sale, but a contract of hiring and service, or a bargain by which one party undertakes to labor in a certain way for the other party, who is thereupon to pay him certain compensation ; and this contract is, therefore, not within the statute."

Story upon this subject simply says, that "executory contracts for the delivery· of goods after they shall be manufactured, or after certain work and labor shall be expended upon them, are not within the statute." *Story on Cont.*, Sec. 787. Bronson J., in *Downs vs. Ross*, 23 *Wen.* 270, says, that "if the thing sold exists at the time *in solido*, the mere fact that something remains to be done to put it in a marketable condition, will not take the contract out of the operation of the statute." From which the inference is clear that if the thing sold does *not* exist *in solido*, and labor be performed upon it, the contract is not within the statute.

Still another test is given by Judge Harris in *Cartwright vs. Stewart*, 19 *Bur.* 455, who says, "the true criterion for determining whether a contract is for the sale of goods, and therefore within the statute of frauds, or for work and labor and materials, and so not within the statute, is to inquire whether the work and labor required in order to prepare the subject matter of the contract for delivery is to be done for the *vendor* or the *vendee*."   However correct this rule may be in the abstract, it cannot prove of any great practical value, inasmuch as it must be usually difficult of application, as the questions generally arising under this statute, originate in contracts so obscure in their terms, that it is difficult to determine for whom the parties intended the work should be performed.

Tested by these rules, does the contract in the case at bar,

come within the provisions of the statute of frauds? Upon a careful examination of the terms of the contract as stated in the pleadings, and the authorities in analogous cases, I am constrained to hold that it does not. From the language used by the parties, it would appear that their intention was rather that the Plaintiff should perform certain labor for the Defendant, than sell him goods. It will be observed that none of the terms ordinarily employed in contracts of bargain and sale are used. It does not appear that the Plaintiff agreed to "sell" and "deliver" the materials or houses mentioned, nor that the Defendant agreed to "purchase" the same. Had a simple sale of the goods been intended, it is reasonable to suppose that the parties would have used the apt and ordinary language to express that intent. But "the Plaintiff agreed to furnish material for, and prepare, and fit the same for putting up at the steam mill of Pomeroy, Bates & Co., in Minneapolis, four houses, known and designated as the Fitzgerald patent portable houses," of certain specified dimensions, at a specified time and for a specified price. The Plaintiff was first to furnish or provide the materials. Next he was to "prepare" the materials after having furnished them. And thirdly, he agrees to "fit" the materials so prepared, ready for putting up. All these different steps necessarily imply the performance of work and labor, and it would appear to have been the intent that this labor should be performed by the Plaintiff or under his supervision, as the contract goes on to state that "if *he, the said Plaintiff*, would furnish said materials, and prepare and fit the same as soon," &c., then the Defendant would pay the price agreed upon. It is not a contract for the sale of houses as such, for the Plaintiff was not to erect them, only to prepare and fit the material for erection. It is not a contract for the sale of material *in solido*, for it does not appear that even the materials were in existence at the time of the contract, certainly not in the shape and form in which they were required to be, by the contract. Using language in its ordinary acceptation, we must conclude that the Plaintiff agreed to make or prepare these materials, and that it would not have been a compliance with the contract, had he purchased them,

ready for delivery, or putting up, as required by the agreement. The contract not only implies, but states that certain labor is to be performed by the Plaintiff, and also blends together the price of the thing and compensation for work, labor, skill and material, so that they cannot be discriminated, and thus brings it within the rule laid down by Parsons above cited.

This view I think is sustained by the authorities in analogous cases. In *Hight vs. Ripley*, 19 *Maine* 137, the Defendant agreed with the Plaintiff to furnish, as soon as practicable, 1,000 or 1,200 pounds of malleable hoe shanks, agreeable to patterns left with him; and to furnish a larger amount if required at a diminished price. The Court held that this was a contract for the manufacture of the articles referred to, and not within the statute. The case at bar is a much stronger one in favor of the Plaintiff than this. The same may be remarked with regard to the case of *Mixer vs. Howarth*, 21 *Pick.* 205. And it is difficult to see wherein the case at bar differs in principle from that of *Crookshank vs. Burrill*, 18 *Johns.* 58, and *Sewell vs. Fitch*, 8 *Cow.* 215, the agreements mentioned in which, were held not to be within the statute. It is reasonable to suppose that the material, that is, the wood out of which the wagon (in the case above cited) was to be made, existed, but not in the form required by the Plaintiff, that is, prepared and fitted for the purpose of a wagon. So, in the present case, the material for these houses may have been in existence at the time of making the contract, in the log, or some crude state, but not in the form required for the houses.

The case of *Downs vs. Ross*, 23 *Wen.* 270, cited by the Counsel for the Respondent, is easily distinguishable from the foregoing and the case at bar. That was an agreement for the *purchase* of wheat, a part of which was to be threshed, and that which was threshed at the time of the contract, was to be again cleaned. Here, although work was to be done by the seller, upon or concerning the thing contracted for, it was not of a kind to change either the form or character of the thing sold. The wheat was actually in existence at the time the

contract was made, and no change could be effected upon the *thing itself* by the labor performed, but the change effected would be rather upon other substances connected with the wheat. So in *Seymour vs. Davis*, 2 *Sand.* 239, which was an agreement for the sale of cider, the seller to refine it before delivery. The article itself was in existence at the time of making the contract, (at least such seems to be the inference,) and neither its nature or form would be changed by the labor to be performed upon it.

The strongest case that I find in support of the view taken by the Counsel for the Respondent, is that of *Thompson vs. Maccaroni*, 9 *Barn. & Cress.* 561, Justice Littledale, in giving the opinion, says, that "it appears to me to be sufficient, if, at the time of the *completion* of the contract, the *subject matter* be goods, wares and merchandises." We are not aware that any American case has taken this broad ground, and had such been considered the settled law in this country on this subject, a number of the decisions above cited are in direct conflict with it.

It is urged by the Counsel for the Respondent that these "Fitzgerald portable houses" were a patented right, that no one save the Plaintiff had a right to perform the work and labor requisite to prepare the subject matter of the contract for delivery, and that it was that patent, and the right to manufacture that he sold. If this were the fact, it is not apparent that it necessarily brings the contract within the purview of the statute. But it is sufficient to state that it no where appears from the pleadings that the houses mentioned were to be constructed under any valid or existing patent. If such were the fact, and the Respondent would derive any advantage from it, it should not have been left to mere inference from the name of the article only, but should have been set forth by proper allegations in the pleadings.

It may be added that where doubts may exist as to the construction of a contract with reference to the statute of frauds, the doubt should be given in favor of sustaining the contract, rather than to declare it void. It may well be questioned whether the statute in its present form is productive of more

good than evil, and there seems no good reason for giving it a wider scope than may be clearly required by the terms of the contract, to which the statute is sought to be applied.

The order granting a new trial should be reversed and judgment below affirmed.