C. W. LEWIS v. D. A. EVANS, Appellant.

**Statute of Frauds:** SALE OF CORN TO BE SHELLED. Under Code,
sections 4625, 4626, making evidence of an oral contract for the
sale of personalty incompetent unless in case of a partial delivery
or payment, except when the article sold is not at the time owned
by the vendor, and ready for delivery, but labor, skill, or money
are necessarily to be expended in producing or procuring the
same, a contract for the sale of the corn to be shelled, and that
unfit for shelling to be thrown out, is within the statute, as no
labor was necessary to produce or procure the corn.

*Appeal from Calhoun District Court.*—HON. S. M. ELWOOD,
Judge.

THURSDAY, MAY 11, 1899.

*Rose & Henderson* for appellant.

*M. R. McCreary* and *J. B. McCreary* for appellee.

LADD, J.—The averments of the petition are, in sub-
stance, that the defendant orally agreed to pay the plaintiff
ten cents a bushel for one thousand five hundred bushels of
corn delivered at Lohrville, to be shelled from a crib selected
by the defendant, and corn unfit for shelling to be thrown
out; that, in pursuance of this understanding, the defendant
pointed out the crib, and the plaintiff sorted and shelled the
corn therefrom, which he would not otherwise have done,
and undertook to deliver it as agreed, when defendant refused
to accept it; that plaintiff has been damaged in the sum of
fifty-two dollars and fifty cents. The demurrer of the
defendant was sustained in the justice's court on the ground
that the contract was within the statute of frauds, but this
ruling was reversed in the district court, and the cause certi-
fied as provided in section 4110 of the Code. As no part of
the property was delivered, and no part of the price paid,

unless labor, skill, or money was necessarily to be expended in producing or procuring the shelled corn, the agreement is within the statute of frauds. Code, sections 4625, 4626. In *Mighell v. Dougherty*, 86 Iowa, 484, it was held that an oral contract to deliver oats in a merchantable condition at an elevator, raised, but not harvested or threshed, was within the statute. This was on the ground that the seller was not thereby required to do different than he would have done in the ordinary course of his business. His care of the oats was not affected by the contract of sale, and this rule was laid down: "If the grain is sold, and no part of it delivered, and no part of the price is paid, and the contract is not in writing, and the labor, skill, and money which is necessary to be expended upon it to fit it for market is such only as, in the ordinary course of the defendant's business, he would be compelled to expend upon it, or devote to it, in order to preserve and care for it as a good husbandman, the case is purely a sale, and comes within the statute." This does not cover the case at bar. Corn is marketable when not shelled, and a good husbandman quite as often sells it "in the ear" as when shelled from the cob. We may, then, look somewhat to the authorities, in order to ascertain the principle which shall govern. Our statute, barring the exception in section 4626, is like that of England prior to Lord Tenterden's act, with this difference as to proof: Here no evidence of the oral contract can be received, while there the contract is not "allowed to be good." In *Clayton v. Andrews*, 4 Burrows, 2101, Lord Mansfield adjudged an oral contract to deliver a quantity of wheat at a future day, not within the statute because the wheat was unthreshed and unfit for delivery at the time of the bargain. The decision was put on the ground that the statute did not include executory contracts, following *Towers v. Osborne*, 1 Strange, 506. But in *Rondeau v. Wyatt*, 2 H. Bl. 63, this distinction was abandoned, and since then has been disregarded. That case not only held the statute to apply to executory contracts as well as those immediately

to be performed, but also that the purchase of an article manufactured by the seller in his ordinary course of business, to be delivered in the future, though not then existing, was within the statute. There the oral agreement was for the future delivery of three thousand sacks of flour, not made. See, also, *Cooper v. Elston,* 7 Term R. 14. In *Garbutt v. Watson,* 5 Barn. & Ald, 613, which was for the nonacceptance of one hundred sacks of flour, to be manufactured by the seller, who was a miller, *Clayton v. Andrews, supra,* was distinctly disapproved, and recovery denied. See, also, *Smith v. Surman,* 9 Barn. & C. 561; *Groves v. Buck,* 3 Maule & S. 178; *Wilks v. Atkinson,* 6 Taunt. 12; *Lee v. Griffin,* 1 Best & S. 272. The principle of the decision in the last case is thus announced by Blackburn, J.: "If the contract be such that it will result in the sale of a chattel, then it constitutes a sale; but if the work and labor be bestowed in such a manner as that the result would not be anything that could be properly said to be the subject of sale, the action is for work and labor." A dentist was denied recovery from an executor for a set of artificial teeth made for a deceased lady. However philosophical and comprehensive the rule may be, its adoption is precluded by our statute. But it and other cases cited overthrow *Clayton v. Andrews, supra,* and for this reason that case is no longer an authority. In *Eichelberger v. McCauley,* 9 Am. Dec. 515, the court of appeals of Maryland, in 1821, in reluctantly following *Clayton v. Andrews,* said: "The distinction thus recognized the court do not intend shall be pushed further than the circumstances of the *Case of Clayton* and Andrews will justify, and they must not, therefore, be understood to extend it to cases where the articles sold are not to be prepared for delivery by work and labor, and where the work and labor may not be considered in some measure a part of the contract." In *Downs v. Ross,* 23 Wend. 270, an agreement for the sale of seven hundred and fifty bushels of wheat, belonging to the seller, part to be threshed and the rest to be cleaned more thoroughly, to be

delivered in six days, at a fixed price, was held to be within the statute. The rule in that state seems to be that a contract for an article existing in *solido* is held to be within, and for a thing not yet made, but to be delivered in the future, without, the statute. *Crookshank v. Burrell,* 18 Johns, 58 (9 Am. Dec. 187); *Sewall v. Fitch,* 8 Cow. 215; *Parsons v. Loucks,* 48 N. Y. 17; *Cooke v. Millard,* 65 N. Y. 352. This rule is thus criticised in Browne on Statutory Frauds, section 302: "It may often be a matter of great nicety whether the labor to be applied to the article really amounts to constructing it or only repairing it; as, for instance, where articles are kept on hand by manufacturers in parts or pieces, ready to be put together. And it is difficult, also, to see the reason for the distinction, for in either case the article is incapable, at the time, of being delivered according to the contract. It is as much so when incomplete as when not existing." The effect of the Massachusetts decisions is thus stated in *Goddard v. Binney,* 115 Mass. 454: "That a contract for the sale of articles then existing, or such as the vendor, in the course of his business, manufactures or produces for the general market, whether on hand at the time or not, is a contract for the sale of goods, to which the statute applies. But, on the other hand, if the goods are to be manufactured especially for the purchaser, and upon his special order, and not for the general market, the case is not within the statute." *Mixer v. Howarth,* 21 Pick. 205 (32 Am. Dec. 256); *Gardner v. Joy,* 9 Metc. (Mass.) 177. The rule thus clearly stated quite generally prevails in this country. *Flynn v. Dougherty,* 91 Cal. 669 (27 Pac. Rep. 1080); 8 Am. & Eng. Enc. Law, 709; 3 Parsons Contracts (6th ed.) 59; *Hientz v. Burkhard,* 29 Or. 55 (43 Pac. Rep. 866, 54 Am. St. Rep. 777); *Cason v. Cheely,* 6 Ga. 554; *Meincke v. Falk,* 55 Wis. 427 (42 Am. Rep. 722, 13 N. W. Rep. 545); *Phipps v. McFarlane,* 3 Minn. 109 (Gil. 61, 74 Am. Dec. 743); *Hight v. Ripley,* 19 Me. 137; *Pratt v. Miller,* 109 Mo. 78 (32 Am. St. Rep. 656, 18 S. W. Rep. 965); *Finney v. Apgar,* 31 N. J. Law, 266;

*Pilkin v. Noyes,* 48 N. H. 294 (97 Am. Dec. 615). In the last case the sale of three acres of potatoes was involved, and it was held proper to "leave it to the jury, in view of all the circumstances of the case, to find whether the contract was essentially for the work and labor and materials of the defendant in raising the potatoes, so that he was bound himself to raise them, or whether it was substantially a sale of potatoes, which he might raise himself, or procure by purchase or otherwise. If it was the former, it would not be within the statute of frauds; but, if the latter, it would be." See *contra, Watts v. Friend,* 10 Barn. & C. 446. In *Hardell v. McClure,* 1 Chand. 271, wheat to be threshed was to be delivered at a particular mill, and the court, regarding *Clayton v. Andrews* overruled by *Garbutt v. Watson,* and later English cases, and *Eichelberger v. McCauley* as resting on that authority alone, followed *Downs v. Ross, supra,* and adjudged refusal to give the following instruction error: "That the wheat existing in *solido* at the time the contract was made, and not having to be raised or manufactured, and though unthreshed, it was a contract within the statute of frauds, and the plaintiff could not recover." This decision is expressly approved in *Meincke v. Falk, supra,* where it is said: "After a very careful examination of the authorities, we are induced to believe that *Hardell v. McClure, supra,* was well decided, not only by force of reason, but upon the weight of authority, for it was clearly not a contract for special labor in manufacturing anything, but a contract to sell and deliver a certain quantity of wheat." See, also, *Clark v. Nicols,* 107 Mass. 547. The supreme court of Minnesota, in *Brown v. Sanborn,* 21 Minn. 402, held a contract for the purchase of all the flax straw to be raised from forty-five bushels of flax seed, to be "delivered in a dry condition, free from grass, weeds, and all foreign substances," within the statute. We are inclined to the conclusion reached in *Downs v. Ross, Hardell v. McClure,* and *Brown v. Sanborn.* They are like the case at bar in that the work to be done was not of a kind to change either the

form or the character of the thing sold. The corn was in existence at the time of the sale, and no change was to be wrought in it, but rather its separation from the substance connected therewith. *Phipps v. McFarlane,* 3 Minn. 109 (Gil. 61, 74 Am. Dec. 743). The sale was of shelled corn. The labor to be expended did not pertain to its production, but consisted in the rejection of that of poorer quality, and the removal of the corn from the cobs. It had already been produced, and the labor involved simply related to its preparation for the market. As no labor was necessarily to be expended in producing or procuring the shelled corn, the sale was within the statute.—REVERSED.